968 So.2d 1210 (2007)
STATE of Louisiana, Appellee
v.
Barry Lacurtis RIDEOUT, Appellant.
No. 42,689-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2007.
*1211 Mark O. Foster, for Louisiana Appellate Project Appellant.
Paul J. Carmouche, District Attorney, William J. Edwards, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY and MOORE, JJ.
CARAWAY, J.
A jury convicted defendant of aggravated rape and molestation of a juvenile after the 13-year-old victim delivered a full-term baby, and the father's identity was revealed. The defendant engaged in sexual intercourse with the victim four to five times, beginning when she was age 12. The trial court sentenced defendant to life imprisonment at hard labor without benefits for aggravated rape, ten years at hard labor for molestation of a juvenile, and ordered the sentences served concurrently. Defendant was also ordered to register as a sex offender. Defendant appeals. Finding no error, we affirm the convictions and the sentences.

Facts
The defendant, Barry Lacurtis Rideout, and his wife and children moved to Shreveport in 2003, to manage an apartment complex. Defendant presented himself as an assistant pastor affiliated with a nondenominational Seventh Day Adventist Church, and began teaching bible study classes in his office at the complex. The victim's family moved here in December 2003, and they lived in another apartment complex. Her mother became acquainted with defendant at her place of employment and started attending the bible study with her two daughters. The victim, whose initials are RSM, was the younger daughter. RSM and her sister would hang around with defendant's family and also began babysitting the younger children, including an infant and a toddler, at defendant's apartment. RSM testified she talked to defendant because he was a pastor.
In late June or the very beginning of July, both families drove separate vehicles to California so RSM's mother could attend a retreat for cancer treatment. RSM's family stayed in Fresno, and defendant took his family to his mother's home in San Bernardino. While the mother was at the retreat, defendant took RSM and her sister to the beach for a family outing. The next time the girls went with the defendant and his children, they left California and defendant drove their mother's car back home to Louisiana. The mother testified defendant did not have permission to take her daughters from California back home.
RSM's mother did not return home until several weeks later. During this interval, *1212 the initial act of intercourse between the defendant and victim occurred. RSM testified that she and defendant engaged in sexual intercourse four or five times between July and December 2004. She described the first time in July as occurring in a parked car in Bossier City where her grandparents lived. Subsequently, one or two sexual acts occurred in either defendant's vehicle and/or his Country Club apartment after she went back to school. Another intervening act apparently occurred after defendant moved into a new apartment at Summertree Apartments on September 9, 2004. The final occasion occurred in December 2004, in Shreveport, when RSM was 4½ months pregnant. During all of these times, defendant was 41 years old. RSM turned 13 on October 28, 2004.
As a result of her pregnancy, an infant daughter was delivered on June 29, 2005. The baby was considered "term," and this indicated a pregnancy of between 38 and 44 weeks.
Defendant was ultimately arrested and DNA testing was performed on him and the child. The crime lab's DNA analyst testified at trial concerning the DNA testing results which concluded that the relative probability of defendant's paternity was .9999, and the likelihood of his paternity was 19.7 million times more likely than anyone else.
After a two-day jury trial, the defendant was convicted of aggravated rape and molestation of a juvenile. The trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for the aggravated rape conviction, and ten years imprisonment at hard labor for the molestation conviction. Both sentences were ordered to be served concurrently, and defendant was further ordered to register as a sex offender. Defendant appeals his convictions and sentences.

Discussion
Defendant first combines two assignments of error, arguing that the jury was obliged to make a factual determination as to the parish in which the offending conduct occurred as an element of the crimes. He argues that (1) the evidence was insufficient to prove the victim was under age thirteen when the sexual acts occurred in Caddo Parish, and (2) the trial court should have instructed the jury to focus on the Caddo Parish incidents in determining not only when, but where the offenses occurred.
The defendant's assertions raise the issue of venue. All criminal trials shall take place in the parish where the offense occurred. La.C.Cr.P. art. 611. Contrary to the suggestions of the defense argument, neither of the two crimes of conviction, aggravated rape and molestation of the juvenile, has an offense element concerning the place of the crime.
La.C.Cr.P. art. 615 provides:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
Under this article, if the defendant feels that he is being charged for an offense that occurred in another parish, or that the State cannot prove the venue of the alleged crime, he must raise the issue before trial by a motion to quash, and it must be decided by the court before trial. State v. Clark, 02-1463 (La.6/27/03), 851 So.2d 1055; State v. Gatch, 27,701 (La. App.2d Cir.2/28/96), 669 So.2d 676, writ *1213 denied, 96-0810 (La.9/20/96), 679 So.2d 429. The reduced burden of proof listed in Article 615 demonstrates that the venue of the crime is not an element of the crime. Accordingly, defendant's failure to file a motion to quash waives any issue of venue.
One other aspect of defendant's argument, which also misses the import of Article 615, is his claim that the state's presentation of evidence of defendant's additional sexual misconduct in Bossier Parish required a special venue instruction for the jury. The state raised in its pre-trial motion the defendant's Bossier Parish sexual misconduct as allowable other crimes evidence. Again, if that same evidence of defendant's Bossier Parish actions with the victim represented the only evidence of aggravated rape, making prosecution in Caddo Parish improper, the defendant was obliged to raise venue through the pre-trial motion to quash. No special jury instruction was therefore required because the substance of defendant's arguments relate to venue.
Moreover, RSM testified the defendant molested her in Shreveport while he was moving into the Summertree apartment. Defendant leased the Summertree apartment on September 9, 2004. The evidence adduced at trial clearly showed that the baby was born on June 29, 2005. The gestational period of between 266 days and 308 days meant that conception occurred between August 25, 2004 and October 6, 2004, in advance of RSM's thirteenth birthday on October 28, 2004. Therefore, it is clear that defendant's sexual misconduct with the victim occurred in Caddo Parish before she turned 13.
Accordingly, the assignments of error concerning venue and the sufficiency of the evidence of the venue of the crime are without merit.
Defendant's final assignment argues that the aggravated rape statute, La. R.S. 14:42 as it existed in 2003 was defective and unconstitutionally vague, resulting in an illegal sentence being imposed on the defendant in violation of his constitutional rights.
Prior to its 2003 amendment, La. R.S. 14:42(A) defined aggravated rape as follows:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
In 2003, the legislature through Act No. 795, effective August 15, 2003, changed the age of the victim, providing that aggravated rape occurs "[W]hen the victim is under the age of thirteen years." Previously in 1997 the penalty provisions of the aggravated rape statute, La. R.S. 14:42(D), were amended and re-enacted to add the death penalty for rape of a child under 12 years of age. Acts 1997, No. 898. Act 795 of 2003 did not adjust this death penalty provision for the rape of a child under 13. Therefore, at the time of the instant offense, the penalties for aggravated rape provided as follows:
D.(1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
(2) However, if the victim was under the age of twelve years, as provided by Paragraph A(4) of this Section:

*1214 (a) And if the district attorney seeks a capital verdict, the offender shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, in accordance with the determination of the jury. The provisions of C.Cr.P. Art. 782 relative to cases in which punishment may be capital shall apply.
(b) And if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The provisions of C.Cr.P. Art. 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply.
In 2006, the state legislature amended La. R.S. 14:42(D)(2) by Acts 2006, No. 178, effective August 15, 2006, "to change the penalty provisions of the crime relative to the age of the victim to conform to the definition of the crime." Therefore, the penalty provision under subpart (D) was amended, as follows:
D. (2) However, if the victim was under the age of thirteen years, as provided by Paragraph (A)(4) of this Section:
A statute is presumed to be valid and its constitutionality should be upheld whenever possible. State v. Thomas, 04-559 (La.1/19/05), 891 So.2d 1233; State v. Griffin, 495 So.2d 1306 (La.1986). Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3. Constitutional challenges may be based upon vagueness. State v. Walker, 26,026 (La.App.2d Cir.5/4/94), 637 So.2d 583, writ denied 94-1369 (La.9/30/94), 642 So.2d 868; State v. Gamberella, 633 So.2d 595 (La.App. 1st Cir.1993), writ denied 94-0200 (La.6/24/94), 640 So.2d 1341. Failure of a sentencing portion of the statute does not invalidate the entire statute. State v. Drew, 360 So.2d 500 (La.1978).
Defendant argues that in 2004 upon the commission of his crime, there was no clear punishment for aggravated rape of a child between 12 and 13 years of age. We disagree. To the extent that Act 795 of 2003 failed to amend the death penalty provision of La. R.S. 14:42(D)(2) to make applicable its effect for the rape of a child between those ages, the general sentencing provision of Section (D)(1) of the statute applied. In all cases where the district attorney was not otherwise provided the option to seek the death penalty, the life sentence of Section (D)(1) was clearly applied to all aggravated rapes following the statutory amendment in 2003.
This assignment of error is without merit.

Conclusion
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.