PITMAN, J.
Defendant Terry Matthew Pittman was convicted of one count of indecent behavior with juveniles, one count of molestation of a juvenile under the age of 13 and one count of pornography involving juveniles. For the conviction of indecent behavior with juveniles, the trial court sentenced Defendant to serve five years at hard labor and a fine of $2,500. For the conviction of molestation of a juvenile under the age of 13, the trial court sentenced Defendant to serve 60 years at hard labor, 25 of which will be served without benefit of probation, parole or suspension of sentence. For the conviction of pornography involving juveniles, the trial court sentenced Defendant to 15 years at hard labor and a fine of $2,500. The trial court ordered that these three sentences be served consecutively. Defendant appeals his convictions and sentences. For the following reasons, we affirm Defendant's convictions; affirm his sentences, with instructions for the correction of the minutes; and remand to the trial court for the limited purpose of providing Defendant with the appropriate written notice of the sex offender registration requirements.
FACTS
The state charged Defendant by bill of information with one count of indecent behavior with juveniles in violation of La. R.S. 14:81(A)(2), one count of molestation of a juvenile in violation of La. R.S. 14:81.2 and one count of pornography involving juveniles in violation of La. R.S. 14:81.1. As to Count One, the state alleged that on April 20, 2014, Defendant transmitted a textual or written communication depicting lewd and lascivious conduct, text and *834 words to M.P.,[1] a person reasonably believed to be under the age of 17 and reasonably believed to be at least two years younger than Defendant, with the intention of arousing and gratifying the sexual desires of M.P. or Defendant. As to Count Two, the state alleged that between 2010 and April 2014, Defendant committed lascivious acts upon the person or in the presence of M.P., a child under the age of 17 and at least two years younger than Defendant, with the intention of arousing or gratifying the sexual desires of M.P. or Defendant, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision of M.P. As to Count Three, the state alleged that on April 23, 2014, Defendant possessed visual electronic reproductions of sexual performances involving children under the age of 17.
In a pretrial La. C.E. art. 412 motion, Defendant sought to introduce evidence regarding a sexual relationship between M.P. and a young man named Brian McCreary. He asserted that Mr. McCreary pled guilty to carnal knowledge of a juvenile as a result of this relationship and that this evidence is favorable to him (Defendant). The state responded that evidence of sexual behavior between M.P. and Mr. McCreary is protected by La. C.E. art. 412 and is inadmissible. Following a hearing, the trial court denied the motion, finding that M.P.'s sexual activity with Mr. McCreary is not relevant or probative and is not intended to show the consent of M.P.
Trial began on September 14, 2016. M.P. testified that her birthday is April 28, 1999, and that Defendant is her father. She stated that her father began abusing her five days before she turned 11 years old. She and her father were watching television that evening in the living room, while her stepmother, Nina Long, and her stepsiblings were asleep in their bedrooms. While watching television, Defendant fell asleep. She kissed him on the cheek to say good night, and he woke up, grabbed her by the shoulders, pulled her on top of him and started kissing her. She noted that at first she assumed he thought she was her stepmother; but, when he looked at her, she discerned that he knew who she was. He then began to run his hands over her chest and down the sides of her hips and eventually touched her underneath her nightgown. He moved her so that she was lying on her back on the couch, undressed her so that her nightgown was up around her shoulders and removed her underwear. He kissed her all over her body and then performed oral sex on her. She stated that he then took her into the bedroom where her younger sister was sleeping, and they had vaginal intercourse on the floor. She testified that this was the first time she had sexual intercourse. He then took her into the bathroom and began pacing and mumbling, acting scared and upset, like he was in trouble. He asked her if she had started her period yet, and she told him that she had not. He told her that he would get her a pill in the morning that would keep her from getting pregnant and that she would have to remind him to get her the pill. She stated that he did give her the pill.
M.P. further testified that she and Defendant continued to have sexual intercourse for four years and that she stopped counting how many times it happened after the ninth time. She stated that due to the custody agreement between her parents, she alternated weeks living with her *835 mother and father. She noted that when she stayed with her father, she "would be lucky to leave his house after that week without having to have sex with him." They had sexual intercourse in the laundry room, in the shed, in the backyard, in the pool and in his truck. She noted that a majority of the occurrences happened in the truck and that they had oral, vaginal and anal sexual intercourse. Once she began her menstrual cycle, Defendant used a condom and would sometimes give her a pill.
M.P. also testified that when she was 11 or 12 years old, her stepmother walked into the laundry room where she and Defendant were having sexual intercourse. Defendant and Ms. Long got into an argument, and Defendant threatened Ms. Long. Ms. Long later tried to talk to her about what was going on; but, out of fear, she denied that anything was happening. Ms. Long contacted Child Protective Services, and a detective came to school to talk to her. She admitted that she lied and stated that she was about to take a bath and needed a towel, so she went to the laundry room and slipped and Defendant was trying to pick her up when Ms. Long observed them. She stated that nothing came of this investigation and that was the only time she was interviewed.
M.P. further testified that when she was 12 or 13 years old, Ms. Long saw her and Defendant having sexual intercourse a second time when they were in the shed next to the house. She stated that the sexual intercourse with her father continued until five days before she turned 15, a total of four years. She noted that Defendant did not offer her anything in exchange for sexual intercourse, but did like to give her gifts, including flowers. Defendant told her that if she went to the police, he would be taken away and would not be able to take care of her siblings and that they would grow up without a father. She stated that he specifically told her not to tell anyone.
M.P. also testified that she and Defendant communicated by text message and would exchange nude photographs of themselves with each other. She sent him photographs when he asked for them, and this occurred more times than she could remember. She stated that when she was around the age of 14, he repeatedly asked her for a video of her masturbating. She eventually used her laptop to record a video of herself in the bathroom of her mother's house. Defendant downloaded the video from her laptop onto a red and black SanDisk flash drive and then put the flash drive in his pocket. She knew Defendant viewed the video because he commented that it was suspicious that she said "Dad" a lot in the video.
M.P. further testified that she and Defendant also role played in a sexual manner via text message, i.e., she played the slave and he played the master. She stated that this role playing began after he discovered that she and her friend role played in writing. She stated that she left a paper at Defendant's house, on which she and her friend had written out their role playing, in an attempt to disgust him so that he would leave her alone.
M.P. also testified that during the four years she engaged in sexual intercourse with Defendant, she always believed that it was wrong. She stated that she went from being a straight-A student to having failing grades. She was depressed and tried to commit suicide twice by cutting her arms and legs with a razor. She testified that Defendant was arrested after she confided to her friend Mr. McCreary that she lost her virginity to her father. Mr. McCreary told his mother and his mother told M.P.'s *836 mother, and the police were called.[2]
Nina Long testified that she and Defendant were in a relationship for 14 years and have three children together. She stated that she has known M.P. since M.P. was three years old and that M.P. lived with her and Defendant off and on during M.P.'s childhood. She testified that in January 2012, she walked into the laundry room during the night and observed Defendant in his boxers and M.P. without clothing and that M.P. was straddling Defendant. She "freaked out," went to get her telephone and told Defendant she was going to call the police. Defendant forcefully took the telephone from her, took her keys and blocked the door. She testified that she also walked in on Defendant and M.P. in the shed and that she observed M.P. bent over the weight bench with her shorts pulled down and Defendant behind her. She also testified about other odd behavior she observed between M.P. and Defendant, including that they "would cuddle up together, and hold each other." She stated that while she and Defendant lived together, she observed pornography in their house, including child pornography. She saw child pornography on his computer and cellphone and observed Defendant watching child pornography on his computer. She knew the girls in the pornography were underage because they were visibly prepubescent.
Sergeant James Moore and Detective Jared Marshall, both of the Caddo Parish Sheriff's Office, testified about their involvement in the investigation. Sgt. Moore testified that on April 24, 2014, he interviewed M.P. and her mother. He seized M.P.'s cellphone and placed it into evidence. Det. Marshall retrieved a series of sexually explicit text messages between M.P. and Defendant from M.P.'s cellphone. Sgt. Moore determined that these text messages were probable cause to arrest Defendant for indecent behavior with juveniles, and he arrested Defendant at his house. Ms. Long allowed Sgt. Moore into the house, and he seized Defendant's cellphone. He then interviewed Ms. Long. Defendant and Ms. Long provided Sgt. Moore with Defendant's telephone number, which was consistent with the number that exchanged the explicit text messages with M.P. Sgt. Moore also retrieved a red and black SanDisk flash drive from Defendant's house. Det. Marshall ran a forensic preview on the flash drive and found approximately 15 files of child pornography, including a video of M.P. masturbating in a bathtub. Sgt. Moore noted that all of the files had been deleted from the flash drive except for the video of M.P. He viewed the contents of the flash drive and then secured an arrest warrant for pornography involving juveniles.
Defendant chose not to testify at trial, but the defense proffered a letter written by him, containing what his testimony would have been had he been permitted to testify regarding M.P.'s relationship with Brian McCreary.
On September 15, 2016, a unanimous jury found Defendant guilty as charged of all three counts.
On September 22, 2016, Defendant filed a motion for new trial. He argued that the trial court erred in denying his La. C.E. art. 412 motion seeking to introduce evidence pertaining to the sexual behavior of M.P. with Mr. McCreary. He also filed a motion for post-verdict judgment of acquittal, contending that there was insufficient evidence to prove beyond a reasonable *837 doubt that he was guilty of molestation of a juvenile below the age of 13. In the alternative, he argued that he is entitled to a modification of the verdict and to a judgment of conviction of the lesser included responsive offense of molestation of a juvenile.
At a hearing on September 22, 2016, the trial court denied Defendant's motions for new trial and for post-verdict judgment of acquittal. Defendant waived any legal delays for sentencing. After reviewing the La. C. Cr. P. art. 894.1 factors, it sentenced Defendant to serve 5 years at hard labor and a fine of $2,500 for the conviction of indecent behavior with juveniles. For the conviction of molestation of a juvenile under the age of 13, it sentenced Defendant to serve 60 years at hard labor, 25 of which to be served without benefit of probation, parole or suspension of sentence. For the conviction of pornography involving juveniles, it sentenced Defendant to 15 years at hard labor and a fine of $2,500. It ordered these three sentences to be served consecutively.
On October 20, 2016, Defendant filed a motion to reconsider sentence and argued that his sentences are excessive. He contended that his sentences should run concurrently rather than consecutively. On October 28, 2016, the trial court filed a ruling denying Defendant's motion to reconsider sentence.
Defendant appeals his convictions and sentences.
DISCUSSION
Insufficient Evidence-Indecent Behavior with Juveniles
Defendant argues that the evidence adduced at trial is insufficient to support his conviction of indecent behavior with juveniles. He contends that his conviction was predicated on a series of text messages retrieved from M.P.'s cellphone and that the state failed to prove that he was the person who actually sent those text messages or that the messages were sent from his cellphone. He asserts that the state relied solely upon M.P.'s testimony and the contact information in her cellphone to identify the person with whom she was communicating. He contends that it is simple to change the contact name and number associated with sent or received text messages, regardless of whether the contact information accurately reflects the number or name of the person with whom the conversation occurred.
The state argues that the evidence presented at trial is more than sufficient to prove all of the elements of indecent behavior with juveniles beyond a reasonable doubt, including that the lewd or lascivious text messages received by M.P. were sent by Defendant. It notes that immediately after his arrest, investigators seized Defendant's cellphone from his house and Ms. Long identified it as his. It asserts that both Ms. Long and Defendant provided the number for Defendant's cellphone, which matched the phone number that sent the sexually explicit text messages to M.P.'s cellphone.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Hearold , 603 So.2d 731 (La. 1992). See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Robertson , 96-1048 (La. 10/4/96), 680 So.2d 1165.
*838 In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness-if believed by the trier of fact-is sufficient support for a requisite factual conclusion. State v. Watson , 32,203 (La. App. 2 Cir. 8/18/99), 743 So.2d 239, writ denied , 99-3014 (La. 3/31/00), 759 So.2d 69. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. Id. This is equally applicable to the testimony of a sexual assault victim. Id.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam , 36,118 (La. App. 2 Cir. 8/30/02), 827 So.2d 508.
La. R.S. 14:81 provides, in pertinent part, that:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
* * *
(2) The transmission, delivery or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.
Defendant does not challenge that a series of sexually explicit text messages were retrieved from M.P.'s cellphone, but asserts that the state failed to prove that he was the person who sent the messages. The sexually explicit text messages retrieved from M.P.'s cellphone were sent from the phone number 318-230-0201, a number that was assigned to "Dad" in her contacts. A printout of these text messages was introduced at trial as State Exhibit C, and Sgt. Moore read several of the messages to the jury. He testified that after he arrested Defendant, he seized a cellphone from his house, which Ms. Long identified as Defendant's. Ms. Long told Sgt. Moore that Defendant's cellphone number was 318-230-0201, but that she did not know his passcode. Following his arrest, Defendant provided Sgt. Moore with personal information, including his name, social security number and phone number. Defendant also stated that his phone number was 318-230-0201.
Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that the state proved the essential elements of indecent behavior with juveniles beyond a reasonable doubt. There was sufficient circumstantial evidence for the jury to conclude that Defendant was the person exchanging sexually explicit text messages with M.P.
Accordingly, this assignment of error lacks merit.
Insufficient Evidence-Molestation of a Juvenile
Defendant argues that the evidence adduced at trial is insufficient to support his conviction of molestation of a juvenile.
*839 He contends that the state did not prove that he used force, threats, intimidation or use of influence by virtue of having a position of supervision or control over M.P. He contends that holding the position of supervision or control over M.P. is not sufficient to satisfy the element of force or influence, but that he must have used his influence over her to force her into participating in these acts against her will. He asserts that there was no testimony at trial to support a conclusion that he used influence over M.P., as she did not testify that she was afraid of the consequences of prohibiting him from committing the sexual acts or that he used his authority over her to accomplish the sexual acts. He states that M.P. never testified that he physically forced her to engage in sexual acts or exerted influence over her in such a way that her will to resist was overcome. He also questions the testimonies of Ms. Long and Mr. McCreary and contends that the state used conflicting statements and testimony in order to obtain the conviction. He requests that his conviction be reversed or that, in the alternative, his conviction be modified to a conviction for the responsive offense of indecent behavior with juveniles.
The state argues that the record demonstrates that Defendant used his influence by virtue of his position of control or supervision over M.P. as her father to perpetrate the offense of molestation of a juvenile. It notes that M.P. lived with Defendant every other week during the years he committed the molestation and other crimes; that M.P. was dependent on Defendant for transportation to and from his house, thus preventing her from leaving at will; and that M.P. witnessed Defendant's acts of intimidation and violence toward Ms. Long after Ms. Long observed Defendant molesting M.P.
La. R.S. 14:81.2(A)(1) provides:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
Louisiana courts consider the following factors when making a determination as to whether a defendant used influence by virtue of his position of supervision or control over the victim: (1) the amount of time the defendant spent alone with the victim; (2) the nature of the relationship between the victim and the defendant; (3) the defendant's age; and (4) the defendant's authority to discipline. State v. Dale , 50,195 (La. App. 2 Cir. 11/18/15), 180 So.3d 528, writ denied , 15-2291 (La. 4/4/16), 190 So.3d 1203, citing Burton v. Cain , No. CIV.A. 11-1781, 2012 WL 5966532 (E.D. La. Aug. 21, 2012), report and recommendation approved , No. CIV.A. 11-1781, 2012 WL 5960197 (E.D. La. Nov. 28, 2012).
Although Defendant asserts that the evidence was insufficient to prove that he used influence by virtue of a position of control or supervision over M.P. in order to commit the alleged acts of molestation, the application of the above factors demonstrates that the evidence sufficiently supports this element of the offense. Defendant is the biological father of M.P. When the molestation began in 2010, M.P., born April 28, 1999, was 10 years old and Defendant, born April 13, 1981, was 29; when the *840 molestation ended in 2014, M.P. was 14 and Defendant was 33. At times during her childhood, M.P. lived with Defendant full-time. During the years of molestation, M.P. alternated weeks living at her father's house and living at her mother's house. As M.P.'s biological parent with whom she lived regularly, Defendant had the authority to discipline M.P. M.P. testified that it was during the weeks she was obligated to spend at her father's house that the molestation occurred and that she was "lucky to leave his house after that week without having to have sex with him." She stated that her father would drive her to and from his house and that they would often have sexual intercourse in his truck.
Although Defendant argues that M.P. did not testify that he threatened her or forced her to engage in sexual conduct, M.P. did testify that Defendant told her not to tell anyone about their sexual activity because if she did, he would be taken away and his children would grow up without a father. M.P. also testified that after Ms. Long observed her and Defendant in the laundry room, she witnessed Defendant threaten Ms. Long and that "[t]hings were thrown."
Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that the state proved the essential elements of molestation of a juvenile beyond a reasonable doubt. The testimony of M.P. alone is sufficient to support this conviction.
Accordingly, this assignment of error lacks merit.
Insufficient Evidence-Pornography Involving Juveniles
Defendant argues that the evidence adduced at trial is insufficient to support his conviction of pornography involving juveniles. He asserts that the state failed to prove that he ever possessed the flash drive that contained child pornography or that he viewed the videos on the flash drive, including the video that M.P. testified to making for him.
La. R.S. 14:81.1(A)(1) provides that "[i]t shall be unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles."
M.P. testified that, at Defendant's request, she made a video of herself masturbating. She observed Defendant download the pornographic video of her from her laptop onto a red and black SanDisk flash drive and then put that flash drive into his pocket. She stated that she knew Defendant viewed the video because he discussed details of it with her, including that she said "Dad" a lot. At trial, M.P. identified the video as State Exhibit A-1 and the flash drive as State Exhibit B. The testimony of M.P. alone is sufficient to support the conviction of pornography involving juveniles. The jury clearly chose to accept M.P.'s testimony that Defendant possessed the red and black SanDisk flash drive that was admitted as State Exhibit B and that contained the video admitted as State Exhibit A-1.
Sgt. Moore testified that he retrieved a red and black SanDisk flash drive from Defendant's house and identified it as State Exhibit B. He viewed its contents and testified that one of the videos was of M.P. masturbating in the bathtub with a shampoo bottle. He noted that the flash drive contained at least 15 deleted files of child pornography. He stated that this flash drive also contained deleted files with Defendant's personal information, including a driver's license photograph and a W-9 form. Det. Marshall corroborated this testimony about the seizure of the flash drive and that it contained 10 to 15 videos *841 of child pornography, including a video of M.P. masturbating in a bathtub.
Based on this evidence, a rational jury could conclude that Defendant possessed and viewed the pornographic video of M.P. that was located on the red and black SanDisk flash drive. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that the state proved the essential elements of pornography involving juveniles beyond a reasonable doubt.
Accordingly, this assignment of error lacks merit.
La. C.E. art. 412 Evidence
Defendant argues that the trial court erred when it prohibited him from eliciting testimony regarding matters outside the scope of La. C.E. art. 412. He admits that the La. C.E. art. 412 notice was deficient on its face and untimely filed, but notes that it was considered on the merits by the trial court. He asserts that at several points during the trial, defense counsel attempted to cross-examine witnesses about M.P.'s relationship with Mr. McCreary, his feelings about that relationship and an alleged confrontation between him and Mr. McCreary, but the trial court consistently ruled that any evidence about the relationship was inadmissible pursuant to La. C.E. art. 412. He argues that these rulings prevented him from presenting the only defense theory that could have viably been pursued at trial, i.e., that M.P. fabricated or exaggerated the allegations against him in order to protect her relationship with Mr. McCreary or to prevent him from obstructing that relationship. He contends that even if the trial court correctly ruled that the evidence was inadmissible, the scope of the trial court's rulings exceeded the scope of the protections contained in La. C.E. art. 412.
The state argues that Defendant's right to present a defense must be balanced against M.P.'s interest under La. C.E. art. 412 to protect her sexual history from becoming public. It asserts that the trial court did not err in excluding evidence of M.P.'s sexual history; but, had it erred in excluding this evidence, the error would be harmless given the overwhelming evidence against Defendant.
The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. State v. Authier , 46,903 (La. App. 2 Cir. 4/25/12), 92 So.3d 494, writ denied , 12-1138 (La. 11/2/12), 99 So.3d 662, citing Pointer v. Texas , 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and State v. Vaughn , 448 So.2d 1260 (La. 1983). The confrontation clause of the Louisiana Constitution directly affords each accused the right "to confront and cross-examine the witnesses against him[.]" La. Const. art. I, § 16.
Generally, a defendant may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. La. C.E. art. 607(C). However, the right of an accused sex offender to present a defense must be balanced against the victim's interests under La. C.E. art. 412, which is intended to protect a victim of a sexual assault from having his or her sexual history made public. State v. Authier , supra , citing State v. Everidge , 96-2665 (La. 12/2/97), 702 So.2d 680. The purpose of the rape shield law is to "protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." State v. Williams , 05-1560 (La. 4/24/06), 927 So.2d 266, quoting *842 Michigan v. Lucas , 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).
La. C.E. art. 412(A) provides:
A.(1) Opinion and reputation evidence; sexual assault cases. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
(2) Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(a) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(b) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
Thus, in a prosecution for sexually assaultive behavior, La. C.E. art. 412 prohibits the introduction of evidence of the victim's past sexual behavior, with certain limited exceptions. State v. Authier , supra .
The trial court did not err in excluding evidence of M.P.'s past sexual behavior, specifically of her alleged sexual relationship with Mr. McCreary. This evidence is not relevant to a determination of whether Defendant committed the offenses of indecent behavior with juveniles, molestation of a juvenile or pornography involving juveniles. Evidence of M.P.'s alleged sexual relationship with Mr. McCreary is not an exception to La. C.E. art 412(A)(1) as set forth in La. C.E. art. 412(A)(2).
Accordingly, this assignment of error lacks merit.
Excessive Sentences
Defendant argues that this matter should be remanded for resentencing because his sentences are excessive. He contends that the trial court insufficiently justified his consecutive sentences and that the sentences imposed are unconstitutionally excessive in light of the facts and circumstances of this case. He asserts that the sentences imposed amount to a life sentence and are grossly out of proportion to the gravity of the offenses. He contends that he is not among the most egregious offenders because this case does not involve multiple victims, severe acts of molestation, physical damage to a juvenile or the use of force or physical threats of harm to the juvenile. He asserts that the trial court did not give any meaningful consideration to his expressions of remorse, lack of significant criminal history or potential for rehabilitation.
The state argues that the record justifies the imposition of consecutive sentences. It also notes the egregiousness of Defendant's actions and contends that the sentences imposed do not shock the sense of justice.
When reviewing an excessive sentence claim, the appellate court uses a two-prong test. First, the record must demonstrate that the trial court complied with La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating and mitigating circumstance, but the record must reflect that it adequately considered the guidelines of La. C. Cr. P. art. 894.1. State v. Smith , 433 So.2d 688 (La. 1983). The trial court should consider the *843 defendant's personal history and prior criminal record, the seriousness of the offense, the likelihood that the defendant will commit another crime and the defendant's potential for rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981). The trial judge is not limited to a consideration of the defendant's prior convictions, but may properly review all of his prior criminal activity. State v. Russell , 40,526 (La. App. 2 Cir. 1/27/05), 920 So.2d 866, writ denied , 06-0478 (La. 9/29/06), 937 So.2d 851. The trial court is not required to assign any particular weight to any specific matters at sentencing. State v. Quiambao , 36,587 (La. App. 2 Cir. 12/11/02), 833 So.2d 1103, writ denied , 03-0477 (La. 5/16/03), 843 So.2d 1130.
Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Square , 433 So.2d 104 (La. 1983) ; State v. Black , 28,100 (La. App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied , 96-0836 (La. 9/20/96), 679 So.2d 430. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Free , 46,894 (La. App. 2 Cir. 1/25/12), 86 So.3d 29.
Regarding concurrent and consecutive sentences, La. C. Cr. P. art 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Concurrent sentences arising out of a single cause of conduct are not mandatory, and it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Boudreaux , 41,660 (La. App. 2 Cir. 12/13/06), 945 So.2d 898, writ denied , 07-0058 (La. 11/2/07), 966 So.2d 591. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. Id. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Id. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for defendant's rehabilitation and whether defendant has received a benefit from a plea bargain. Id. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. Id.
*844 Whoever commits the crime of indecent behavior with juveniles shall be fined not more than $5,000, or imprisoned with or without hard labor for not more than 7 years, or both. La. R.S. 14:81(H)(1).
Whoever commits the crime of molestation of a juvenile when the victim is under the age of 13 years shall be imprisoned at hard labor for not less than 25 years nor more than 99 years. At least 25 years of the sentence imposed shall be served without benefit of probation, parole or suspension of sentence. La. R.S. 14:81.2(D)(1).
Whoever intentionally possesses pornography involving juveniles shall be fined not more than $50,000 and shall be imprisoned at hard labor for not less than 5 years or more than 20 years, without benefit of parole, probation or suspension of sentence. La. R.S. 14:81.1(E)(1)(a).
In the case sub judice , the trial court complied with the requirements of La. C. Cr. P. art. 894.1 and considered aggravating and mitigating factors prior to imposing Defendant's sentences. It found that Defendant presented an undue risk that he would commit another offense if he received a suspended sentence or probation, that Defendant was in need of a correctional or custodial environment and that lesser sentences than those imposed would deprecate the seriousness of the offenses. It noted that Defendant's conduct during the offenses manifested deliberate cruelty toward M.P., that he knew or should have known that M.P. was particularly vulnerable due to her youth and that he used his position as her father to facilitate the commission of the offenses. It further found that M.P. suffered significant, permanent emotional injury as a result of the offenses. It also noted that the evidence presented at trial showed that the abuse occurred over a four-year period and that multiple incidents occurred, but were not charged separately. The record demonstrates that the trial court complied with La. C. Cr. P. art. 894.1, addressing the relevant aggravating factors and determining that the mitigating factors outlined in the statute did not apply to this case.
The sentences imposed by the trial court are not constitutionally excessive, are within the statutory ranges and are not the maximum sentences possible for each conviction. In this case, a father sexually abused his biological daughter over a four-year period, beginning when the victim was 10 years old. Defendant and the victim had vaginal, oral and anal sexual intercourse; they had sexually explicit conversations by text message; and Defendant influenced M.P. to film a pornographic video of herself for his viewing. Considering these facts, the sentences imposed by the trial court are not grossly out of proportion to the severity of the crimes and do not shock the sense of justice. The trial court did not abuse its discretion in imposing these sentences.
Furthermore, although the trial court did not specifically articulate the reasons for imposing consecutive sentences in this case, it considered the relevant factors during the sentencing hearing, and the record provides an adequate factual basis to support consecutive sentences.
Accordingly, this assignment of error lacks merit.
ERRORS PATENT
Pornography Involving Juveniles Sentence
The trial court failed to impose the sentence for pornography involving juveniles without the benefit of parole, probation or suspension of sentence. La. R.S. 14:81.1(E)(1)(a) provides that the sentence be imposed without the benefit of parole, *845 probation or suspension of sentence. The sentence is thus illegally lenient.
This is harmless error. La. R.S. 15:301.1(A) provides, in pertinent part:
The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
Accordingly, there is no need to remand for correction of the sentencing error. When a trial court fails to order statutorily mandated service of sentence without benefits, the sentence will automatically be served without benefits for the required time period. See State v. Williams , 00-1725 (La. 11/28/01), 800 So.2d 790.
This court orders that the entirety of the 15-year hard labor sentence for the conviction of pornography involving juveniles be served without the benefit of parole, probation or suspension of sentence. We further order that the trial court minutes be amended to reflect this sentencing adjustment. See State v. Shelton , 50,851 (La. App. 2 Cir. 9/28/16), 207 So.3d 549.
Sex Offender Registration
The trial court failed to provide Defendant with written notice of the sex offender registration requirements set forth in La. R.S. 15:540, et seq . Indecent behavior with juveniles, molestation of a juvenile and pornography involving juveniles are defined as sex offenses under La. R.S. 15:541. La R.S. 15:543 requires that the trial court provide written notice to a defendant convicted of a sex offense of the registration and notification requirements and that an entry be made in the court minutes stating that the written notification was provided to the defendant.
The record does not indicate that the trial court provided Defendant with written notification of the sex offender requirements. Accordingly, this court remands this matter to the trial court for the purpose of providing the appropriate written notice to Defendant of the sex offender registration requirements and for the filing of written proof of such notice into the record of the proceedings. See State v. Wilson , 50,418 (La. App. 2 Cir. 4/6/16), 189 So.3d 513, writ denied , 16-0793 (La. 4/13/17), 218 So.3d 629.
CONCLUSION
For the foregoing reasons, we affirm the convictions of Defendant Terry Matthew Pittman. We affirm his sentences, with instructions for the correction of the minutes. We remand this matter to the trial court for the limited purpose of providing Defendant with the appropriate written notice of the sex offender registration requirements.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, WITH INSTRUCTIONS FOR CORRECTION OF THE MINUTES; REMANDED WITH INSTRUCTIONS.

To protect the privacy of the victim, she will be referred to by her initials, pursuant to La. R.S. 46:1844(W).

Brian McCreary, his mother and M.P.'s mother all testified at trial and corroborated this statement made by M.P.